IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| DANIEL KUBACKI on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) ) | CIVIL ACTION |
| vs. ) ) ) | Case No. 13-cv-0729 |
| PEAPOD, LLC, ) ) | Judge Milton I. Shadur |
| Defendant. | Magistrate Michael T. Mason |

**MEMORANDUM IN SUPPORT OF
RENEWED MOTION FOR CLASS CERTIFICATION**

In support of his motion for class certification of his claims under the Telephone Consumer Protection Act ("TCPA") against Peapod, LLC ("Peapod"), Plaintiff, Daniel Kubacki, states:

**I.   Facts**

Plaintiff received a pre-recorded telemarketing call offering a coupon from Peapod on his cellular telephone on December 4, 2012. Peapod is a grocery service that delivers groceries to consumers' homes. In 2012, it created a new service that allowed a consumer to travel to a set location to pick up the groceries. This new service was open to the public and peapod engaged in a mass marketing effort to advertise its new product to both customers and non-customers. ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████

Not only did plaintiff never provide prior express consent to Peapod for telemarketing calls[1], no one had. At trial plaintiff will argue Peapod acted willfully when it called plaintiff's and the putative class' cellular telephones with a prerecorded message advertising its new service because it did not have prior express consent to call anybody.

For example, Peapod's customer agreement does not provide prior express consent. *See Exhibit 2.* Peapod is foreclosed from arguing implied consent because the FCC previously rejected any implied consent for telemarketing in its 2003 Order: *"Finally, we reject ... proposals to create implied consent because we find that there are adequate solutions in the marketplace to enable telemarketers to identify wireless numbers."* *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, FCC Release No. 03-153, 18 FCC Rcd 14014, at 14118 (June 26, 2003) ("2003 TCPA Order").

Consent is not found in the application either because the provision in the application requesting cellular numbers was specifically limited to call cell phones regarding a customer's pending delivery. See *Exhibit 3* bates stamped Peapod 000009. Peapod's customer application actually limits consent to call cell phones to only the specific issues checked off under "My Alerts." In other words, there was no consent to send advertising messages even if a class member was a customer who provided her number and consented to be called regarding her deliveries. *Downing v. Papa John's*

---

[1] It is important to note that the FCC relaxed consent for debt collection calls in its 2008 Order, but that has no bearing on telemarketing calls, which are at issue in this case. *Compare In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2008 FCC Order"), 23 F.C.C.R. 559 at ¶ 10 (Dec. 28, 2007). (Consent for debt collection calls if the number provided during the transaction that resulted in the debt.) *with In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC 12-21* (February 15, 2012) ("2012 FCC Order") (requiring written express consent signed by consumer for telemarketing calls). While Peapod was not required to have signed express written consent to make the pre-recorded calls at issue because the 2012 FCC Order was not effective yet, it still was required to have express prior consent and any relaxed rule for debt collection calls is inapplicable.

2

*USA, Inc.*, 2013 U.S. Dist. LEXIS 72748 (E.D. Va. May 15, 2013) ("Although such legal argument might prevail on different facts, here, it is undisputed that Defendants' website provides a question that specifically asks whether a customer consents to receiving promotional texts. Accordingly, if Plaintiffs version of events is assumed, their decision not to elect to receive promotional texts constituted an "instruction to the contrary" informing Defendants not to send promotional texts.") *Exhibit 4*.

Pursuant to the customer agreement and application, any advertising or informational messages were limited to e-mail at best. Because Peapod did not have consent to call with a pre-recorded message to telemarket its new pick up locations to anybody, including the person it contends it believed it was calling, its calls were willful.

Peapod has attempted to manufacture a distinction based on this Court's initial comments that plaintiff's claims may not be typical as he is a not a customer. Yet, Peapod cannot have it both ways. Peapod denied knowledge of whether it had consent to call plaintiff and denied knowledge if plaintiff had an account with Peapod. *Exhibit 5 - Peapod's response to RFA 22 and 23*. Peapod is attempting to avoid liability as to plaintiff's individual claims by leaving open the door that plaintiff may be a customer, but is attempting to defeat typicality by arguing he is not a customer. Based on the request to admit responses and the need to show willfulness, plaintiff is in the same position as all putative class members to the extent needed to demonstrate typicality.

## II. CONSENT & THE TELEPHONE CONSUMER PROTECTION ACT.

The TCPA does not have an established business relationship whereby a business automatically has consent to call a customer's cellular telephone with pre-recorded telemarketing messages. Instead, the TCPA specifically requires a business to have

"prior express consent[2]" to call both customers' and non-customers' cellular telephones with telemarketing messages. 47 U.S.C. § 227(b)(1)(A)(iii). *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ("Express consent is '[c]onsent that is clearly and unmistakably stated.' Black's Law Dictionary 323 (8th ed. 2004). Thus, Satterfield's consent to receive promotional material by Nextones and its affiliates and brands cannot be read as consenting to the receipt of Simon & Schuster's promotional material."); *Thrasher-Lyon v. CCS Commercial, LLC*, 2012 U.S. Dist. LEXIS 125203 (N.D. Ill. 2012)(Tharp, J.); 2012 U.S. Dist. LEXIS 157230 (denying reconsideration, but certifying for interlocutory appeal) ("the consumer must give "prior express consent" to receive robocalls – not to telephone calls in general"); *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 U.S. Dist. LEXIS 65603 (S.D. Fla. 2013) ("In other words, Defendants ask the Court to imply consent from Plaintiff's wife's conduct. They do not argue that Plaintiff, or his wife, expressly told the Hospital that it, or any of its agents or affiliates, could call Plaintiff on his cell phone using an automatic telephone dialing system or artificial prerecorded voice for debt collection or payment purposes. And nowhere in the Conditions of Admission form or Notice of Privacy Practices does it expressly state that Plaintiff agreed to such calls. The TCPA plainly requires such "prior express consent" before a party may be called; mere "implied consent" will not do."); *In re Jiffy Lube, Int'l*, 847 F.Supp.2d 1253 (S.D. Cal. 2012) ("The court notes that even if it were to take judicial notice of the invoices, it is not persuaded that a customer's provision of a

---

[2] Courts have uniformly held that "prior express consent" is an affirmative defense and Defendant bears the burden of proof. *See Nelson v. Santander Consumer USA, Inc.*, 2013 U.S. Dist. LEXIS 40799, *17 (W.D. Wisc. 2013)(collecting cases); *see also CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011)(referring to "the defense of invitation or permission," which is the analogous defense under §227(b)(1)(C)) of the TCPA addressing facsimile advertisements).

4

telephone number on the invoice in question would constitute prior express consent. Heartland's citations to FCC documents are not particularly convincing, and it is doubtful that Plaintiffs' alleged consent was "clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955.")

In short, there is no distinction between a customer and non-customer because prior express consent for telemarketing robocalls is required for both. Because a business like Peapod is required to have consent, the Seventh Circuit recommended companies (1) manually telephone a number prior to any TCPA campaign to insure they have consent to call and (2) use reverse look up to determine if a cellular number is still assigned to the customer. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012) (holding that there is no consent if a number is reassigned to a different consumer.)

It is important to note that the Seventh Circuit had no qualms holding in favor of plaintiff in *Soppet* as to "prior express consent" on a class wide basis where class members were both customers and non-customers who the defendant "mistakenly" called, like Soppet.[3] As explained herein, the Court should certify the class.

### III. RULE 23

Plaintiff seeks to certify a class of:

> All persons within the United States or its Territories (2) to whose cellular telephone number (3) Defendant placed a non-emergency telephone call relating to Peapod's Pick Up Service (4) using an automatic telephone dialing system or an artificial or prerecorded voice (5) on or after January 30, 2009.

---

[3] The opinion is incorrect in its statement that Judge Kennelly had certified the class in *Soppet* at the time of the appeal. Still, the fact that the panel held in favor of plaintiff when they understood the class to have been certified represents at least a tacit ratification of certification in certain cases. *See also Holtzman v. Turza*, Nos. 11-3188 and 11-3746, 2013 U.S. App. LEXIS 17811 (7th Cir. Aug. 26,2013) (Easterbrook, J.) (affirming class wide judgment in TCPA case).

5

The above class should be certified as it meets all four requirements of Rule 23(a) along with at least one of the three categories of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997).

In addition, the very nature of sending a pre-recorded messages en mass makes class certification appropriate. This is why numerous TCPA cell phone classes have been certified. *Meyer v. Portfolio Recovery Associates, LLC*, 2012 WL 6720599 (9th Cir. Dec. 28, 2012) (preliminary certification for purposes of entering Fed.R.Civ.P. 23(b)(2) injunction); *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 2012 WL 5473719 (W.D. Wash. Nov. 9, 2012); *Balbarin v. North Star Capital Acquisition*, LLC, 2010 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011), *Mitchem v. Illinois Collection Service*, 2009 C 7274, 2011 U.S. Dist. LEXIS 714 (N.D. Ill. Jan. 3, 2011) [4].

### A. Numerosity

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In determining the number of class members, precise numbers are not required so long as the plaintiff makes a good faith estimate. Generally, classes with more than one hundred plaintiffs satisfy the numerosity requirement because joinder of hundreds of persons would stretch the facilities and abilities of this Court beyond their elastic limit. *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 645 (N.D. Ill. 2006)(Zagel, J.)(citations omitted).

---

[4] *See also Manno v. Healthcare Revenue Recovery Group,LLC*, 2013 U.S.Dist.LEXIS 52620 (S.D.Fla., Mar. 26, 2013) (cellular telephone calls);*Kertesz v. Rick's Cabaret International, Inc.*, Case No. 0:11-cv-61289, DE 36 (S.D.Fla.,April 23, 2012) (text messages); *Espinal v. Burger King Corp.*, Case No. 1:09-cv-20982, DE61 (S.D.Fla., May 25, 2010) (text messages); *Mais v. Gulf Coast Collection Bureau, Inc.*, --- F.Supp.2d ----, 2013 WL 1899616 (S.D.Fla. May 8, 2013).

Peapod provided plaintiff's expert a data set of 18,978 numbers to which it made pre-recorded telemarketing calls relating to Peapod's Pick Up Service. Out of that data set, the expert found that 7,013 were unique cell phone numbers. *See Exhibit 6.* Therefore, the class definition encompasses the calls to all of the 7,013 users of the cellular telephones. To the extent the court limits the class to non-customers, plaintiff's expert has determined that 1,256 cellular telephone numbers did not match the customer's name provided by Peapod. *Id* at paragraph 27. Joinder of these claims together in one suit is impracticable.

B.  **Commonality**

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Class claim must "depend upon a common contention… capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Only a single factual or legal issue which is common to substantially all of the class members is needed. *Barnes v. Canadian Nat'l Ry. Co.*, 2010 U.S. Dist. LEXIS 144916, *5 (N.D. Ill. 2010).

There are several issues common to the class. For instance, (1) Did Peapod act willfully in calling persons without consent; and (2) What is required for a "prior express consent" defense? Each issue is capable of class-wide resolution.

C.  **Typicality**

By proving his willful claim, plaintiff will have proven class wide liability, which is another factor to show that his claim is typical and common to the class claim as all are based on Peapod's course of conduct in calling cellular telephones with a prerecorded

telemarketing advertisement. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (Commonality and typicality are met, if plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.")

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are identical to the class' claims. Plaintiff and the class received pre-recorded calls from Peapod on their cellular telephone numbers. They assert the same exact claims – that Peapod violated section (b)(1)(A)(iii) of the TCPA and they seek the same relief - statutory damages under section (b)(3). As noted above, Peapod denied knowledge of whether it had consent to call plaintiff and denied knowledge if plaintiff has an account with Peapod. *Exhibit 5* -Peapod's response to RFA 22 and 23. Based on the request to admit responses, plaintiff is in the same position as all putative class members to the extent needed to demonstrate typicality as all of the claims are based on the same legal theory.

Thus, in pursuing Plaintiff's own claim, he concomitantly advances the claims of the class. Typicality is satisfied.

    **D.**    **Adequacy**

This requirement ensures the plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement is satisfied where the named representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have

interests antagonistic to those of the class." *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006)(Zagel, J.)

As described above, Plaintiff has no conflict with other class members because Plaintiff and the other class members have the same interests. They were subjected to the same illegal conduct by Peapod (its use of pre-recorded telemarketing messages to call their cell phones), they assert the same claims, and they seek the same relief.

Plaintiff and his counsel have conducted both oral and written discovery, obtained expert testimony to support the class claims, and will continue to vigorously prosecute this action on behalf of the class. In addition, Plaintiff's counsel has no conflicts with the class and is experienced and qualified to prosecute this action on behalf of the class as counsel has been appointed as class counsel in several certified class actions brought under the TCPA. *Exhibit 7, Declaration of Counsel*. Adequacy is satisfied.

E.     **Predominance**

Rule 23(b)(3) requires that "the questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Predominance is a question of efficiency" requiring the Court to determine whether it is more efficient "to decide some issues on a class basis or all issues in separate trials." *Butler v. Sears*, 702 F.3d 359, 362 (7th Cir. 2012). The existence of some individual issues, therefore, does not preclude certification so long as common issues "are more substantial than those subject to only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2nd Cir. 2010); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 484-87 (N.D. Ill. 2009)(Zagel, J.)(certifying class even though several individual issues existed because they did not predominate the action).

Plaintiff has identified at least two common questions that will predominate this action. These issues will be addressed extensively at summary judgment and at trial on a class wide basis. There are no individualized issues that will predominate.

Further "prior express consent" is not an element of plaintiff's TCPA claim or the class definition. To the extent that any affirmative defense of consent is raised by Peapod, it either an issue common to the class or at least one that does not predominate under the TCPA. *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, *11 (N.D. Cal. 2013) (Certifying TCPA text messaging class and holding that any issue of consent is largely a merit question that will determine class size, but does not preclude certification.) *Agne*, 286 F.R.D. at 567, 570 (TCPA text class certified finding consent to be a common issue and rejecting speculation about individual issues); *Manno*, 289 F.R.D., at *25 ("although defendants also contend that the mere act of tendering a phone number to an admissions clerk at the time of medical care constitutes consent per se, this argument whatever its validity, does not defeat commonality. To the contrary, the argument is itself subject to common resolution."); *Balbarin*, 2011 U.S. Dist. at *2-3 (evidence that an individual provided his cellular number "tends to show not that individual consent issues predominate among class members, but instead that the individual in question is not a class member at all... the possibility that some putative class members might ultimately be found to be outside the class does not preclude class certification."); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012)(rejected argument that consent predominated.

To the extent that this Court finds the defense of consent to be an individual issue, it does not predominate over common questions. *See Green v. Service Master On*

*Location Services Corp.*, 2009 U.S. Dist. LEXIS 53297 at *6 (Noting that such an argument"...would wipe away the ability to bring a class action under the TCPA or any statute in which a defendant might raise the issue of the plaintiffs' consent.")[5].

### F.  Fed. R. Civ. P. 23(b)(2)

Class-wide Injunctive relief under the TCPA 47 U.S.C. §227(b)(3)(A), along with other corresponding relief is appropriate. Fed.R.Civ.P. 23(b)(2). In *Meyer v. Portfolio Recovery Associates, LLC*, __ F.3d__ , 2012 WL 6720599 (9th Cir. Dec. 28, 2012), the Ninth Circuit affirmed certification and the injunction of a TCPA autodialer/prerecorded message case. In this case, defendant has acted on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole. Fed. R. Civ. P. 23(b)(2).

### G.  Fed. R. Civ. P. 23(b)(3) -Superiority

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Matters pertinent to" this inquiry include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and; (D) the likely difficulties in managing a class action." *Id.*

Factor (A) favors class treatment because, the class members have claims of modest value and the TCPA is not fee-shifting. A class member who received one call

---

[5] *See Paldo Sign and Display Co. v. Topsail Sportswear Inc.*, 2010 U.S. Dist. LEXIS 125842 (N.D. Ill. 2010); *Garrett v. Ragle Dental Laboratory, Inc.*, 2010 U.S. Dist. LEXIS 108339 (N.D. Ill. 2010); *Targin Sign Sys. v. Preferred Chiropractic Ctr. Ltd.*, 679 F.Supp.2d 894, (N.D. Ill. 2010); *CE Design LTD. v. Cy's Crabhouse North Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 U.S. Dist. LEXIS 73869, *5 (N.D. Ill. 2009); *Hinman v. M and M Rental Center Inc.*, 545 F. Supp. 2d 802; *Sadowski v. Med1 Onlinee LLC*, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill 2008) ; *G.M. Sign, Inc. v. Franklin Bank*, S.S.B, 2008 U.S. Dist. LEXIS 79827, 2008 WL 3889950, at *7 (N.D. Ill. 2008).

from Defendant could recover only $500 and up to $1,500 if the Court used its discretion to treble if the violation was "willful or knowing", which would be dwarfed by the attorney's fees and costs necessary to recover it. Factor (B) also favors class treatment because plaintiff is not aware of any persons who have brought an individual claim against Peapod under the TCPA. With respect to (C), there is no reason why this forum is undesirable. This is plaintiff's chosen forum and Peapod has not sought to transfer this action to any other forum. Finally, with respect to (D), the difficulties in managing this class action are minimal as shown herein. There are no individual issues that will predominate this action and the class is easily identified. All of these factors favor class treatment. In this case, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel Co, of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982); *Agne* at *37-40 (addressing Rule 23(b)(3) factors in a similar TCPA case and finding class treatment superior to individual actions); *Sarabri v. Weltman, Weinberg, & Reis Co.*, 2012 U.S. Dist. LEXIS 125390, *20 (S.D. Cal. 2012) (Finding superiority in a similar TCPA class action).

H.   Ascertainability

Plaintiff expects Peapod to argue that the class should not be certified because it lacks definiteness because it will argue all of the class members cannot be identified. Putting aside the fact that any such argument conflates ascertainability with identification, any such argument is a red herring because Peapod's records identify the majority of the class and plaintiff's expert has already identified the wrong number calls and who those numbers belong to. The reverse look up method was approved by the

Seventh Circuit in *Soppet*. In addition, the telephone providers can be subpoenaed to verify such information[6].

Numerous courts have found classes to be ascertainable even when there are no names associated with the call records. *See e.g.*, *Targin Sign Sys.*, 679 F.Supp.2d at 897-98 (every fax number represents a subscriber, and the fact that a transmission sent to those fax numbers will consequently make it possible to match names and other relevant information through the numbers themselves is the definitive answer to the fallacious [identification] argument by Preferred's counsel."); *Finish Thompson, Inc.*, 2009 U.S. Dist. LEXIS 73869 at *12, 23 (finding a TCPA class to be ascertainable in similar circumstances because "GM Sign can use the fax numbers on the transmission logs to determine the identity and contact information of its class members"); *Franklin Bank, S.S.B.*, 2008 U.S. Dist. LEXIS 79827 at *7 ("Though the logs do not definitively establish the identities of the recipients without further investigation on the part of class counsel, they provide enough information to enable counsel to locate them.") *See also Minter v. Wells Fargo Bank, N.A.*, 283 F.R.D. 268, 276 (D. MD. 2012) (approving of use of a skip tracing service to locate class members from a list of phone numbers); *Rojas v. Career Education Corp*, (N.D. Ill. 2010) (10-cv-5260)(approving use of a "commercially reasonable reverse cell phone number look-up service" to locate class members).

If there is any doubt that the persons identified via the above means are class members, they can also be identified via the claims process. *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 147 (N.D. Ill. 2010) (finding class to be ascertainable because partial credit card information in defendant's records could "be used to verify whether any individual who responds to class notice is in fact a member of

---

[6] The top eight wireless carriers maintained approximately 97% subscriber market share.

the class"); *CE Design v. Beaty Constr. Inc.*, 2009 U.S. Dist. LEXIS 5842, at *4 (N.D. Ill. Jan. 26, 2009) (certifying TCPA class where the list of victims that were illegally sent an advertisement via fax had been destroyed and noting that "potential plaintiffs that come forward will have to represent to the Court—via affidavit and under the penalty of perjury—that they received the fax on the dates in issue"). Since the underlying phone records have not been destroyed, any claim form process would be even simpler.

In this case, the majority of the class members' names and addresses can be found in Peapod' records. For any sub-set that are not customers, those persons have already been identified. Furthermore, it is simply not required, nor is it possible, to ensure that class identification be 100% foolproof. *See* Fed. R. Civ. P. 23(c)(2)(B)("the court must direct to class members the best notice that is practicable under the circumstances, including individual notice *to all members who can be identified through reasonable effort*.")(emphasis added); *Rhodes v. Cracker Barrel Old Country Store, Inc.*, 213 F.R.D. 619, 674 ("The class simply must meet a "minimum standard of definiteness which will allow the trial court to determine membership in the proposed class.").

*Hughes v. Kore of Indiana Enterprise, Inc.*, No. 13-8018, 2013 U.S. App. LEXIS 18873 (7th Cir. Sept. 10, 2013) (Posner, J.) is directly on point. In *Hughes*, the Seventh Circuit reversed the trial court's decertification of the class. In doing so, the court held:

> The judge's second ground for decertification was that the requirement of notice to class members could not be satisfied. ATMs do not store users' names. Instead they keep track of each transaction by assigning a 10-digit identification number to it. The first six digits identify the user's bank; the last four identify the user. To attach names to those last four digits would require subpoenaing each bank identified by the first six. Since Kore's two ATMs were in college bars, obtaining the identity of all the users might require subpoenaing hundreds of banks (the hometown banks of the students, by now mostly ex-students, who are the class members).

> Rule 23(c)(2)(B) of the civil rules requires (for a class action under Rule 23(b)(3), as this one is) only the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The members of the class in this case can't be identified through reasonable effort, effort commensurate with the stakes. (If they could be, they would be entitled to individual notice even if it were very costly, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175-76, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974), as the language of Fed. R. Civ. P. 23(c)(2)(B) implies.) When reasonable effort would not suffice to identify the class members, notice by publication, imperfect though it is, may be substituted. Juris v. Inamed Corp., 685 F.3d 1294, 1321 (11th Cir. 2012); Federal Judicial Center, Manual for Complex Litigation § 21.311, pp. 287-88 (4th ed. 2004).

*Id* at *9-10.

In this case, direct notice can be sent. To the extent that subpoenas are even necessary, there would not be near as many subpoenas as noted in *Hughes*.

Thus, the Court can determine whether any individual satisfies each element of the class definition by reference to objective criteria. The proposed class is much less complicated than many class actions that are routinely certified such as securities cases, false advertising claims, or even the Holocaust classes in *In re Holocaust Victims Assets Litigation*, 105 F.Supp. 2d 139, 143-45 (E.D. N.Y. 2000) (certifying a settlement class of various categories of holocaust victims and their heirs).

## IV.     CONCLUSION

For the above reasons, plaintiff respectfully submits the Court should certify the class defined above, appoint plaintiff class representative, and plaintiff's counsel as class counsel.

Respectfully submitted, Plaintiff

/s/ Keith J. Keogh

Keith J. Keogh
Timothy J. Sostrin
Katherine M. Bowen
Keogh Law, Ltd.
55 W. Monroe, Ste. 3390
Chicago, Illinois 60603
312.726.1092 (office)
312.726.1093 (fax)
Keith@KeoghLaw.com

Matthew W. Kiverts
Law Offices of Matthew W. Kiverts
27 North Wacker Drive, Suite 401
Chicago, Illinois 60606
312.632.1017 (office)
866.596.2210 (fax)
mkiverts@kivertslaw.com